UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WISCONSIN PROVINCE OF THE SOCIETY OF JESUS, | : : : | |
| Plaintiff, | : : | CASE NO. 3:17-cv-01477-VLB |
| V. | : : | |
| AUDREY V. CASSEM, THOMAS F. OWENS, II, TEACHERS INSURANCE AND ANNUITY ASSOCIATION-COLLEGE RETIREMENT EQUITIES FUND, doing business as TIAA-CREF; and NEIL KRANER, in his capacity as Temporary Administrator of the Estate of Edwin H. Cassem, | : : : : : : : : : | June 7, 2018 |
| Defendants. | : | |

## AMENDED COMPLAINT

Plaintiff, the Wisconsin Province of the Society of Jesus (the "Province"), for its Amended Complaint in this action, states as follows:

1.      This lawsuit concerns a dispute over benefits payable under two retirement accounts held by Rev. Edwin H. "Ned" Cassem, S.J., M.D. ("Fr. Cassem"), who died on July 4, 2015.

## PARTIES

2.      The Province is a nonstock corporation organized under the laws of Wisconsin with a principal place of business in Chicago, Illinois and is associated with the Society of Jesus (the "Society" and also commonly known as the "Jesuits"). In the United States and Canada, the Society is organized into

provinces or geographical regions, each headed by a provincial superior appointed by the Superior General in Rome, Italy.[1]

3. Defendant Audrey V. Cassem ("A. Cassem") is the sister-in-law of Fr. Cassem, and is a citizen and resident of West Hartford, Connecticut. A. Cassem is the widow of Fr. Cassem's twin brother, John M. Cassem ("J. Cassem"), who died on August 27, 2009.

4. Defendant Thomas F. Owens II ("Owens"), is the adult son of A. Cassem from a marriage that predated her marriage to J. Cassem. Owens is a citizen and resident of West Hampton Beach, New York.

5. The Defendant Teachers Insurance and Annuity Association of America-College Retirement Equities Fund ("TIAA-CREF") is composed of two associated entities who operated under the trade name TIAA-CREF: the Teachers Insurance and Annuity Association of America ("TIAA") and the College Retirement Equities Fund ("CREF"). TIAA is a legal reserve life insurance company organized under the laws of the State of New York with a principal place of business located at 730 Third Ave., New York, New York 10017-3206, which offers retirement annuity contracts to employees of colleges, universities, other educational and research organizations and other governmental and non-profit institutions. CREF is a non-profit membership corporation, which provides variable annuities for retirement and tax deferred savings plans for employees of

---

[1] In 2017, the Wisconsin Province of the Society of Jesus and the Chicago-Detroit Province of the Society of Jesus combined operations to form the Midwest Jesuits, encompassing an area comprised of Wyoming, North Dakota, South Dakota, Nebraska, Iowa, Minnesota, Wisconsin, Michigan, Indiana, Kentucky, Ohio, and most of northern and eastern Illinois. The Wisconsin Province nonetheless remains a legal corporation.

colleges, universities, other educational and research organizations and other governmental and non-profit institutions.

6.  Defendant Attorney Neil Kraner ("Kraner") is the Temporary Administrator of the Estate of Fr. Cassem, which is pending in the Court of Probate, West Hartford Probate District (PD02) (the "Probate Court").  Attorney Kraner is licensed to practice law in Connecticut and maintains a law office at 23 Arts Center Court, Avon, Connecticut 06001.  Attorney Kraner is named herein solely as a nominal defendant given his role as Temporary Administrator.[2]

## JURISDICTION AND VENUE

7.  This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the parties in this matter are diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8.  Alternately, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1) because this action arises under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 28 U.S.C. § 1001, *et seq*.

9.  This Court may properly maintain personal jurisdiction over the Defendants because the Defendants' contacts with this state are sufficient for the exercise of jurisdiction over the Defendants to comply with traditional notions of fair play and substantial justice.

---

[2] The Province originally raised its claims to the funds in the TIAA-CREF Accounts with the West Hartford Probate Court where the estate of Fr. Cassem remains pending.  At a hearing on August 30, 2017, the Probate Court advised the parties that it determined that it lacked jurisdiction to consider those claims and that they should be decided in federal court.

10. Venue is properly laid in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the acts giving rise to the claims set forth herein occurred in Connecticut.

## GENERAL ALLEGATIONS

A. *Fr. Cassem's Jesuit Formation And Final Vows.*

11. Fr. Cassem was a lifelong Jesuit and member of the Province. Like many Jesuits who also maintain secular occupations, including as physicians, Fr. Cassem practiced as a psychiatrist in Massachusetts for several decades.

12. Fr. Cassem entered the Society in 1953, at the age of eighteen, at St. Stanislaus Seminary ("St. Stanislaus") in Florissant, Missouri.

13. Fr. Cassem completed the Society's required course of studies at St. Stanislaus, Saint Louis University, and Weston Jesuit School of Theology. During that same time, at the urging of the Society and with its full financial support and backing, Fr. Cassem earned a degree in psychology at Saint Louis University, attended Marquette University for pre-medical studies, and graduated from Harvard Medical School in 1966 with a medical degree in Psychiatry.

14. Fr. Cassem was ordained on June 4, 1970, made Tertianship in Omaha, and pronounced his final vows of perpetual poverty,[3] chastity and obedience on December 26, 1985.

---

[3] The vow of poverty, specifically, includes the renunciation of the right to own property. This enables each Jesuit to live simply and promotes a feeling of empathy for the poor. Jesuit priests share possessions communally. Accordingly, a Jesuit turns over all after-acquired property to his province after taking his vows, and the province, in turn, provides for his wants and needs. Stated another way, by entering into the Society and giving his vows, Fr. Cassem entered into a community of priests and brothers who are mutually

15. Because Fr. Cassem's vows included a renunciation of his right to own property, he tendered his income, as he earned it, to the Province, and the Province, in turn, provided for his lifelong wants and needs.

B. *Fr. Cassem's Medical Career.*

16. Fr. Cassem's vocation as a Jesuit saw him become a medical doctor and a psychiatrist. Following his residency in psychiatry and while studying theology, Fr. Cassem remained at Massachusetts General Hospital ("MGH") and Harvard Medical School ("HMS") for the rest of his medical career.

17. Fr. Cassem initially worked in the relatively new field of consultation psychiatry, and eventually became Chief of the Avery Weisman Consultation Psychiatry Service. From 1989 to 2000 Fr. Cassem served as Chief of Psychiatry at MGH at which time he was named Professor of Psychiatry at HMS. Fr. Cassem also founded and chaired the MGH's Optimum Care Committee in 1973, and chaired it until 2009.

18. Over the span of his medical career, Fr. Cassem gained national prominence for his work in palliative and end-of-life care. Fr. Cassem also completed important research in the relationship between depression and heart disease. And, from its original publication through its sixth edition, Fr. Cassem edited MGH's Handbook of General Hospital Psychiatry. In 2009, HMS established an endowed chair in psychosomatic medicine in Fr. Cassem's honor.

---

interdependent. Each member of the community relinquished title to personal property and monies, turned over money and property for their common benefit, and, in return, received a living sustenance in the form of food, shelter, health insurance premiums, car payments and car insurance.

5

19. Throughout his medical career, Fr. Cassem tendered his income to the Province, and the Province, in turn, provided for his lifelong wants and needs.

C.  *The TIAA-CREFF Accounts.*

20. Fr. Cassem accumulated two retirement accounts with TIAA-CREF in connection with his positions at MGH and HMS: (1) the Massachusetts General Hospital Academic Annuity Plan (#102787), Contract No. A741815-3 ("TIAA-A741815-3"), and (2) the Harvard University Retirement Plan (#100316), Contract No. P741815-0 ("CREF-P741815-0" and, together with TIAA-A741815-3, the "TIAA-CREF Accounts" or the "Plans").

21. In 1976, consistent with and as required by his vows, Fr. Cassem executed beneficiary designation forms with TIAA-CREF naming the Province as the beneficiary for the TIAA-CREF Accounts ("Original Beneficiary Designations").

22. After Fr. Cassem's death, the Province learned that on or about January 11, 2011, TIAA-CREF received a form purportedly executed by Fr. Cassem, wherein the beneficiary of the TIAA-CREF Accounts was changed to A. Cassem, as primary beneficiary, and Owens, as contingent beneficiary (the "Subsequent Beneficiary Designation").

23. Upon information and belief the value of the funds in the TIAA-CREF Accounts as of September 30, 2017 were as follows: TIAA-A741815-3 ($1,258,530.07); CREF-P741815-0 (253,656.04).

**D.     *Fr. Cassem's Cognitive Decline And Relocation To West Hartford.***

24.     At least as early as 2010, Fr. Cassem began to display symptoms of dementia, which symptoms became significantly worse over time.

25.     Upon information and belief, and while suffering from dementia, Fr. Cassem moved into the West Hartford home of A. Cassem in or around December 2010, and began to depend on her, a trained nurse, for his care.

26.     In or about December 2010, Fr. Cassem was taken to a local attorney, previously unknown to him, and executed a Durable Power of Attorney in favor of Owens.

27.     At the time that the Subsequent Beneficiary Designation was purportedly executed in favor of A. Cassem as primary beneficiary and Owens as contingent beneficiary, Fr. Cassem was seventy five years old, suffering from dementia and severe cognitive impairment, residing alone with A. Cassem, a trained nurse whom he was relying upon for care, and living hundreds of miles away from any blood relatives and hours away from his friends and colleagues in the Society.

28.     Fr. Cassem continued to live with A. Cassem until his death in 2015.

29.     At the time of his death, Fr. Cassem was still a member of the Society and Province.

E.     *TIAA-CREF's Interpleader*.

30.    On November 13, 2017, counsel for TIAA and CREF, formerly known as TIAA-CREF filed a crossclaim for interpleader on behalf of TIAA and CREF (Doc. 22).  Citing rival, adverse and conflicting claims between the Province and A. Cassem to the proceeds of the TIAA-CREF accounts, TIAA and CREF petitioned the Court to (1) require the Province and Cassem to interplead their respective claims among themselves, and (2) enter a final order directing TIAA and CREFF to disburse the funds to the appropriate beneficiary, as determined by this Court.

**COUNT ONE:**
**DECLARATORY JUDGMENT THAT THE ORIGINAL BENEFICIARY DESIGNATIONS REMAIN ENFORCEABLE PURSUANT TO 28 U.S.C. §§ 2201 AND 2202**
**(AS TO A. CASSEM, OWENS, TIAA-CREF AND KRANER)**

31.    Paragraphs 1 through 30 are hereby incorporated by reference as if fully set forth herein.

32.    By virtue of his final vows, Fr. Cassem could not acquire property except for the Province.

33.    Fr. Cassem's final vows constitute an enforceable contract among and between the Province and Fr. Cassem, through which Fr. Cassem fully and finally renounced and assigned any and all property then owned or later acquired to the Province.

34.    Put otherwise, as a result of taking the final vow of poverty and making the renunciations in connection therewith, Fr. Cassem entered into an enforceable contract that he would, at least while a Jesuit and member of the

8

Province, transfer to the Province any property which he received or might receive. As such, Fr. Cassem contractually renounced his right to own, acquire or dispose of property.

35. By virtue of taking the final vow of poverty, Fr. Cassem was not entitled to retain or direct, for his own benefit or for the benefit of any third-party, ownership interest in any personal property or assets to any person or entity other than the Society. *See Order of St. Benedict of New Jersey v. Steinhauser*, 234 U.S. 640 (1914) (affirming the validity of agreements providing for community ownership with renunciation of individual rights of property during the continuance of membership in the community, where there is freedom to withdraw).

36. Fr. Cassem died a member of the Society, and his remains were buried at the Society's Campion Center Cemetery in Weston, Massachusetts.

37. As a result of his vows, Fr. Cassem did not own the funds in the TIAA-CREF Accounts and thus, did not have the authority to designate a beneficiary in place of the Province.

38. Accordingly, as the Province is the rightful beneficiary under the Plans, the Province is entitled to a declaratory judgment that the Subsequent Beneficiary designation is void and unenforceable, and the Original Beneficiary Designations remain valid and enforceable.

**COUNT TWO:**
**DECLARATORY JUDGMENT THAT THE SUBSEQUENT BENEFICIARY**
**DESIGNATION IS INVALID DUE TO LACK OF CAPACITY**
**PURSUANT TO 28 U.S.C. §§ 2201 AND 2202**
**(AS TO A. CASSEM, OWENS AND TIAA-CREF)**

39. Paragraphs 1 through 38 are hereby incorporated by reference as if fully set forth herein.

40. Fr. Cassem suffered from progressive and incurable dementia resulting in significant cognitive impairment both prior to and at the time of purportedly executing the Subsequent Beneficiary Designation.

41. By virtue of his cognitive impairment, Fr. Cassem did not have the requisite intent, mental and/or legal capacity to make the Subsequent Beneficiary Designation.

42. By virtue of the foregoing, the Subsequent Beneficiary Designation naming A. Cassem as primary beneficiary and Owens as contingent beneficiary of the TIAA-CREF Accounts is void and unenforceable, and does not constitute a revocation of the Original Beneficiary Designations that named the Province as the beneficiary of the TIAA-CREF Accounts.

43. TIAA-CREF should disburse all funds from the TIAA-CREF Accounts to the Province in accordance with the Original Beneficiary Designations.

**COUNT THREE:**
**DECLARATORY JUDGMENT THAT THE SUBSEQUENT BENEFICIARY**
**DESIGNATION IS INVALID DUE TO UNDUE INFLUENCE**
**PURSUANT TO 28 U.S.C. §§ 2201 AND 2202**
**(AS TO A. CASSEM, OWENS AND TIAA-CREF)**

44. Paragraphs 1 through 43 are hereby incorporated by reference as if fully set forth herein.

45. As detailed in paragraph 27 of the Province's General Allegations, *supra*, at the time that the Subsequent Beneficiary Designation was purportedly executed by Fr. Cassem, he was seventy five years old, suffering from dementia and severe cognitive impairment, residing alone with A. Cassem, a trained nurse whom he was relying upon for care, and living hundreds of miles away from any blood relatives and hours away from his friends and colleagues in the Society.

46. By virtue of Fr. Cassem's cognitive impairment, reliance upon A. Cassem for care, and isolation from blood relatives and colleagues, Fr. Cassem was susceptible to undue influence from A. Cassem.

47. A. Cassem had the opportunity to and did in fact exert undue influence over Fr. Cassem with respect to the TIAA-CREF Accounts and his other financial matters.

48. Thus, the Subsequent Beneficiary Designation naming A. Cassem as primary beneficiary and Owens as contingent beneficiary of the TIAA-CREF Accounts is unlawful and should be set aside and made void.

## COUNT FOUR:
## DECLARATION OF RIGHTS PURSUANT TO 29 U.S.C. § 1132
## (AS TO TIAA-CREF)

49. Paragraphs 1 through 48 are hereby incorporated by reference as if fully set forth herein.

50. The Province is entitled to a finding and conclusion by this Court that the Subsequent Beneficiary Designation is invalid, that the Province is the sole beneficiary of the TIAA-CREF Accounts, and that the Province is therefore entitled to benefits rightfully due to it under the terms of the Plans.

**PRAYER FOR RELIEF**

**WHEREFORE, the Plaintiff respectfully prays for the following relief:**

**A.     That the Court declare that:**

**1.     By virtue of his vows and based on *Order of St. Benedict of New Jersey v. Steinhauser*, 234 U.S. 640 (1914), Fr. Cassem never owned the funds in the TIAA-CREF Accounts and thus, did not have the authority to designate a beneficiary in place of the Province;**

**2.     Fr. Cassem lacked the capacity to make the Subsequent Beneficiary Designation;**

**3.     The Subsequent Beneficiary Designation was procured improperly by the undue influence of A. Cassem;**

**4.     The Subsequent Beneficiary Designation is void, invalid, unenforceable or otherwise ineffective to revoke the Original Beneficiary Designations and/or any other designations naming the Province as the beneficiary of all TIAA-CREF Account funds accumulated by Fr. Cassem prior to his death;**

**5.     That the designations naming the Province as the beneficiary of all TIAA-CREF Account funds accumulated by Fr. Cassem prior to his death are valid and enforceable in favor of the Province; and**

   6.  The Province is the sole beneficiary of the TIAA-CREF Accounts and all other TIAA-CREF funds accumulated by Fr. Cassem prior to his death.

 B. That the Court enter a Constructive Trust in favor of the Province as to all TIAA-CREF funds accumulated by Fr. Cassem prior to his death; and

 C. That the Court award such further and additional equitable relief as it may, in the exercise of its discretion, deem just and proper.

PLAINTIFF,

WISCONSIN PROVINCE OF THE
SOCIETY OF JESUS

By */s/ Christopher J. Hug*
  Christopher J. Hug
  Edward J. Heath
  Gregory J. Bennici
  ROBINSON & COLE LLP
  280 Trumbull Street
  Hartford, CT 06103
  Tel.: (860) 275-8200
  Fax: (860) 275-8206
  E-mail: chug@rc.com
     eheath@rc.com
     gbennici@rc.com

## CERTIFICATION

I hereby certify that on June 7, 2018 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ Christopher J. Hug*
**Christopher J. Hug**