UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WISCONSIN PROVINCE OF : <br> THE SOCIETY OF JESUS : <br>     Plaintiff, : <br>   : <br> v. : <br>   : <br> AUDREY V. CASSEM, ET AL. : <br>     Defendants. : <br>   : <br>   : | No. 3:17-cv-01477 (VLB) <br><br> October 22, 2020 |

**MEMORANDUM OF DECISION DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION [DKT. 169] OF THE COURT'S DECISION ON SUMMARY JUDGMENT [DKT. 168]**

Before the Court is Plaintiff Wisconsin Province's Motion for Reconsideration [Dkt. 169] of the Court's September 21, 2020 decision granting in part and denying in part Defendant's Motion for Summary Judgment [Dkt. 168 (Mem. of Decision)]. Plaintiff's claim to invalidate the decedent's beneficiary designation for incapacity survived summary judgment. [Dkt. 168 at 23-35]. Notwithstanding the fact that this claim will proceed, Plaintiff seeks reconsideration because it argues that the Court made a legal error when it concluded that the federal common law standard mirrors Connecticut's testamentary capacity standard. The Court GRANTS reconsideration for purposes of clarifying its earlier ruling on summary judgment, but the relief sought is denied for failure to show good cause.

1

## Legal Standard for Reconsideration

In the Second Circuit, the standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see* D. Conn. L. R. 7(c) (requiring the movant to file along with the motion for reconsideration "a memorandum setting forth concisely the controlling decisions or data the movant believes the Court overlooked").

A motion for reconsideration will only be granted, and should only be sought in *good faith* founded on a *diligent inquiry*, on one of the following three grounds: (1) an intervening change in the law; (2) the availability of new evidence; or (3) the need to correct a clear error or prevent manifest injustice. *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992). Under no circumstances should a party be permitted to use a motion to reconsider solely to relitigate an issue already decided. *Shrader*, 70 F.3d 255, 257 (2d Cir. 1995). "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d at 1255; Advisory Committee on Rules - 1983 Amendments, citing *RoadwayExpress Inc. v. Piper,* 447 U. S. 752 (1980); *Hall v. Cole,* 412 U. S. 1, 5 (1973). Under the "law of the case" doctrine, "when a court has ruled on an issue, that decision should be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate

otherwise." *Johnson v. Holder*, 564 F.3d 95, 99 (2d. Cir. 2009) (internal quotation marks omitted). A party which disagrees with a court's decision may file a timely appeal and a motion for reconsideration should not be allowed to be deployed as a strategic tool for extending an appeal deadline. This principle applies equally were a party seeks to advance an argument previously made on the same grounds rejected by the court, and where a party seeks to advance a new argument it could have but failed to advance in the first instance.

## Background and ERISA preemption

The Court assumes the parties' familiarity with the background facts and arguments presented on summary judgment. The parties did not agree on the applicable legal standard for determining whether an individual is competent to execute a beneficiary designation under Connecticut law; the Defendants argued that a testamentary standard applied, whereas Plaintiff argued that a contractual standard applied. [Dkt. 168 at 23]. As the Court explained, neither party was correct. To prevent further confusion of the issue and to prevent the further unnecessary outlay of judicial resources, the Court will detail how the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* preempts Plaintiff's remaining state law cause of action to invalidate the decedent's beneficiary designation for incapacity.

This case is a dispute over the right to receive benefits under an ERISA-qualified employee benefits plan. To prevail on the remaining count, Plaintiff must establish that the pension beneficiary designation that the decedent filed with the

plan administrator is invalid. The issue is controlled by federal common law because ERISA § 514(a) completely preempts state law on this issue.

Section 514(a) of ERISA (29 U.S.C. § 1144) provides, in relevant part, that ERISA "…supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."[1]

The relevant ERISA civil enforcement provision, § 502(a)(1), states that:

> (a) Persons empowered to bring a civil action
>
> A civil action may be brought--
> (1) by a participant or beneficiary—
>
>> (A) for the relief provided for in subsection (c) of this section, or
>>
>> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

29 U.S.C. § 1132. Plaintiff's claim that it is the proper beneficiary of the decedent's pension benefits falls squarely within the relief provided by § 502(a)(1)(B).

The U.S. Supreme Court has held that "…a suit by a beneficiary to recover benefits from a covered plan, [] falls directly under § 502(a)(1)(B) of ERISA, which provides an exclusive federal cause of action for resolution of such disputes." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62–63 (1987)(citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987)); see also *Krishna v. Colgate Palmolive Co.*, 7 F.3d

---

[1] The parties do not contend, and the Court has found no authority so much as suggesting, that the plans here are not exempt from ERISA's coverage pursuant to 29 U.S.C. § 1003(b).

4

11, 15 (2d Cir. 1993)("Because the designation of beneficiaries to this life insurance policy "relates to" the ERISA plan, the preemption provision applies.").

"…[T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Pilot Life Ins. Co.*, 481 U.S. at 54.

ERISA contains no express provision addressing competency. *Tinsley v. Gen. Motors Corp.*, 227 F.3d 700, 704 (6th Cir. 2000)("Since ERISA does not contain any provisions regulating the problem of beneficiary designations that are forged, the result of undue influence, or otherwise improperly procured, it appears that federal common law must apply to [plaintiff's undue influence and forgery] claims."). Neither party cited any case holding or regulation establishing that such a fundamental function of ERISA, which is to pay promptly retirement benefits to beneficiaries, is controlled by the varying and often times conflicting laws of the 50 states.

In determining and developing federal common law governing employee benefit plans in a uniform manner, federal courts "may state common law as the basis of the federal common law only if the state law is consistent with the policies underlying the federal statute in question; federal courts may not use state

5

common law to re-write a federal statute." *Krishna*, 7 F.3d at 14 (quoting *Nachwalter v. Christie*, 805 F.2d 956, 959–60 (11th Cir.1986)). In *Krishna*, 7 F.3d at 16, the Second Circuit held that the district court erred in applying state law to permit an insured to change the beneficiary of a group life insurance policy through a will because application of the New York rule would compel plan administrators "to look beyond those designations into varying state laws regarding wills, trusts and estates, or domestic relations to determine the proper beneficiaries of Policy distributions."

## Analysis

As discussed by the Court here and in its decision on summary judgment, the issue of whether the decedent had the requisite capacity to execute the subsequent beneficiary designation of his pension benefits is clearly controlled by federal common law. Congress's policy rationales in providing an exclusive federal remedy are aptly demonstrated here. *See Pilot Life*, 481 U.S. at 56-57 (discussing ERISA's legislative history). The parties' positions, applying state law to the benefits determination, burdens plan administrators, sponsors, and ultimately, participants and beneficiaries, by frustrating administrators' ability to predict the legality of disbursing participants' earned benefits without the necessity of considering varying state laws and resorting to interpleader to avoid the liability of misinterpretation.

Plaintiff does not argue that the Court erred in determining that their incapacity claim is preempted by ERISA. Nor does Plaintiff argue or cite controlling federal authority to establish that the Court's formulation of the federal common

law standard was erroneous. Rather, Plaintiff's seeks reconsideration because the Court noted the similarities between the applicable federal common law standard and the ultimately inapplicable lower state-law testamentary standard that the Defendants argued should apply. Plaintiff concedes that "…it is true that the federal common law standard includes <u>some</u> baseline requirements that are present in the Connecticut standard for testamentary capacity (i.e., understanding the nature of the property and the objects of one's bounty). [Dkt. 169-1 (Pl. Mem. in Supp. for Recons.) at 4](underlining in original). However, Plaintiff argues that the Court failed to recognize that the federal common law standard is at least a hybrid of Connecticut's contractual and testamentary capacity standards. [*Id.*]. Plaintiff's argument fails for four reasons.

First, after having failed to identify the controlling legal principals, Plaintiff argues that the Court should analogize the inapplicable legal authority Plaintiff cited to controlling federal law. In the absence of any binding authority cited by the parties but overlooked by the Court, and the fact that Plaintiff's claim survived summary judgment, Plaintiff's argument cannot "…reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257. In light of the failure to meet the strict standard for reconsideration, the Court need go no further.

Second, the Court notes that Plaintiff again mischaracterizes the Court's holding. The Court did not conclude that federal common law was "merely a mirror of Connecticut's testamentary capacity." [Dkt. 169 at 4]. Rather, the Court explained that "[t]he federal common law standard *largely* mirrors Connecticut law." [Dkt. 168 at 30] (emphasis added). The qualifier is significant. Earlier in the

7

decision, the Court had already concluded that Connecticut law "would generally apply a testamentary standard of capacity to an IRA beneficiary designation, but in doing so considers the complexity of the transaction." [*Id*. at 29].

Third, upon further consideration, the ERISA principles discussed in *Krishna* militate against exporting a state-law standard of contractual capacity to pension benefit disputes. In opposing summary judgment, Plaintiff argued that "[t]o meet the higher standard of contractual capacity, Fr. Cassem had to have the ability to fully understand his contractual relationship with the Province, including his commitment to surrender all possessions/property/interests to the Province for his life, in return for his education, housing, food and other corporal needs for life." [Dkt. 152 (Pl. Mem. in Opp'n to Mot. for Summ. J.) at 7]. The Court rejected this argument, but it warrants further discussion in addressing how the capacity standard, as proposed by Plaintiff, conflicts with ERISA.

The decedent's relationship to the Province or to the Defendants should have no bearing on the validity of an ERISA plan document. Plan administrators have a duty under ERISA to follow the participant's beneficiary designation. *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300-301 (2009). Plan administrators should be able to rely on the validity of participant-executed beneficiary designations. *Id*. The Plaintiff's proposed formulation of the capacity standard would require Plan administrators to weigh how a participant would have understood their beneficiary designation to impact other legal commitments and promises, which are virtually unknown to the plan when the beneficiary designation is executed. Certainly, as is the case here, the issue could be resolved

through interpleader actions once a beneficiary dispute arises. But the U.S. Supreme Court in *Kennedy* rejected reliance on interpleaders because it "…would destroy a plan administrator's ability to look at the plan documents and records conforming to them to get clear distribution instructions, without going into court." *Id.* at 301.

"The point is that by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule: "simple administration, avoid[ing] double liability, and ensur[ing] that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules." *Id.* (quoting *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275, 283 (7th Cir. 1990) (Easterbrook, J., dissenting)); see, e.g. *Harmon v. Harmon*, 962 F. Supp. 2d 873, 886 (S.D. Tex. 2013)(plan administrator's decision to pay disputed group life insurance proceeds to listed beneficiary in accordance with the beneficiary designation was supported by substantial evidence).

Fourth, the Court's decision made clear that, regardless of the precise contours of the applicable legal standard, the outcome on summary judgment would be the same. The Court considered the plausibility of two scenarios: Fr. Cassem began experiencing a disputed degree of mental decline at or around the time that the beneficiary designation was made, but, on the other hand, the disposition of his assets could also reflect achievement of a deliberate compromise to avoid conflict with the Province while still benefiting his family.

9

**There is nothing about the structure of the beneficiary designations per se that calls Fr. Cassem's competency into question, even if the applicable standard were a contractual one. Instead, the issue hinges on clinical findings, witness observations, and expert opinions.**

**It is important to note the procedural posture of the Court's earlier decision. In order to prevail on summary judgment, the moving party, the Defendants, bore the burden of proving that no genuine factual disputes exist.** *See Vivenzio v. City of Syracuse*, **611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."** *Id.* **(citing** *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 255 (1986);** *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, **475 U.S. 574, 587 (1986)).**

**The Court made clear that it was required to construe ambiguity in favor of the Plaintiff. [Dkt. 168 at 32]. Since critical facts about Fr. Cassem's mental status and functioning in January 2011 were reasonably disputed, summary judgment for the Defendants could not enter, regardless of the legal standard that the Province would have to meet to void an otherwise facially valid beneficiary designation for incapacity. But, the Court could also find that the Solomonic compromise regarding the disposition of Fr. Cassem's assets could satisfy the highest degree of mental capacity, if that standard were applicable under federal law. It is not for the Court to determine on summary judgment which of the two scenarios above is a more reasonable interpretation of the facts.**

### Conclusion

For the above reasons, Plaintiff's Motion for Reconsideration is DENIED. The Court's decision on summary judgment, clarified here as to ERISA preemption, is the law of the case. The parties are directed to closely review the Court's prior decisions and the applicable binding federal authority as they prepare their final Joint Trial Memorandum ("JTM"). The preparation of the JTM, as is the case with any later stage of litigation, is not an opportunity to relitigate issues already decided.

                IT IS SO ORDERED.

                _____/s/_____
                Hon. Vanessa L. Bryant
                United States District Judge

Dated this day in Hartford, Connecticut: October 22, 2020